UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RORY M. PLANQUE,<br><br>　　　　　　　Plaintiff,<br>　　v.<br><br>SEATTLE POLICE DEPARTMENT et al.,<br><br>　　　　　　　Defendants. | CASE NO. 2:24-cv-00347-TL<br><br>ORDER TO SHOW CAUSE |

　　　This matter is before the Court on its own motion. This is a case about injuries allegedly sustained by *pro se* Plaintiff Rory M. Planque in and subsequent to a fight. On October 31, 2024, the Court gave Plaintiff a deadline of January 31, 2025, to file a Second Amended Complaint ("SAC"). *See* Dkt. No. 12 at 3. That deadline has lapsed, and Plaintiff has not filed a SAC. Therefore, the Court ORDERS Plaintiff to show cause as to why the Court should not dismiss this case without prejudice.

I.     **BACKGROUND**

This case appears to stem from Plaintiff's arrest, detention, and subsequent prosecution following one or more physical altercations that occurred in downtown Seattle in 2018. *See* Dkt. No. 7 at 13–14, 22. Although the narrative of the incident that Plaintiff recounted in his Complaint (Dkt. No. 4) and Amended Complaint (Dkt. No. 7) is not entirely clear, Plaintiff appears to allege that he was assaulted on three separate occasions that evening—by the proprietors and/or patrons of at least one bar and one hotel, by Seattle Police Department ("SPD") officers, and by staff at Harborview Medical Center. *See id.* at 8. In 2023, Plaintiff stood trial in King County Superior Court for his actions on the evening in question, and he was acquitted. *Id.* at 10, 22. Plaintiff also appears to allege that, before and during his trial, various officers of the Superior Court, including the presiding judge, mistreated him. *See id.* at 21–22. Plaintiff's case thus appears to be based on his alleged mistreatment by employees of the police department, the hospital, and superior court.

On March 15, 2024, Plaintiff filed a proposed complaint and submitted an application to proceed *in forma pauperis* ("IFP"). Dkt. Nos. 1, 1-1. On March 20, 2024, United States Magistrate Judge Brian A. Tsuchida granted Plaintiff's IFP application but recommended that the Court review his Complaint under 28 U.S.C. § 1915(e)(2) before it issued summonses. Dkt. No. 3. That same day, Plaintiff's Complaint was filed on the docket. Dkt. No. 4.

On April 10, 2024, after reviewing the Complaint, the Court dismissed it without prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6), finding that while Plaintiff had given a "narrative recounting of the events that appear to form the factual bases for his lawsuit," he had "fail[ed] to provide a short and plain statement of the grounds for the court's jurisdiction . . . [or] a demand for the relief sought." Dkt. No. 6 at 2 (quoting Fed. R. Civ. P. 8(a)(1), (3)). The Court granted Plaintiff leave to file an amended complaint no later than May 10, 2024. *Id.* at 3.

     On May 7, 2024, Plaintiff filed his Amended Complaint. Dkt. No. 7. On May 17, 2024, however, the Court dismissed it without prejudice pursuant to Rule 12(b)(6), noting that Plaintiff had again "fail[ed] to assert a plausible claim from which federal question jurisdiction arises." Dkt. No. 9 at 3. Based on the content of the Amended Complaint, the Court expressed skepticism as to whether Plaintiff's claims were appropriate for federal court, but it granted Plaintiff leave to file a SAC no later than June 21, 2024. *Id.* at 4.

     On June 21, 2024, Plaintiff filed a motion to extend the deadline to file a SAC. Dkt. No. 10. Among other things, Plaintiff advised the Court that on June 6, 2024, he had "received new discovery in the mail from Seattle Police Department / City of Seattle FAS," which "demand[ed] much review which will take time." *Id.* at 1. Plaintiff asserted further that he had made a request for records and body-worn video footage from SPD, but that the agency had informed him that it would take "at least approximately two more months" to fulfill the request. *Id.* at 1–2. In a minute entry dated July 3, 2024, the Court granted Plaintiff's motion and extended his filing deadline to October 21, 2024.

     On October 17, 2024, Plaintiff filed another motion to extend his deadline to file a SAC. Dkt. No. 11. Plaintiff advised the Court of a further delay in SPD's fulfillment of his records request. *See id.* at 1. The Court granted the motion, "provid[ing] Plaintiff with one last extension." Dkt. No. 12 at 3. But the Court also noted that "the events forming the basis for Plaintiff's Complaint appear to have taken place in 2018," and that "Plaintiff could have made his records requests—and received and reviewed what he had sought—before filing his complaint in federal court." *Id.* The Court ordered Plaintiff to file a SAC by January 31, 2025. *Id.*

     On January 31, 2025, Plaintiff filed a letter with the Court. Dkt. No. 13. Although the letter touches on various subjects, the meat of the matter is Plaintiff's inability to meet his deadline for filing a SAC. *See id.* at 6. Confusingly, Plaintiff's letter appears to take two

conflicting positions. On the one hand, Plaintiff advises the Court that he "ha[s] no choice other than to forfeit this lawsuit." *Id.* Plaintiff asserts that he "cannot continue," and he "apologize[s] for any trouble [he's] caused or any time [he has] wasted." *Id.* On the other hand, Plaintiff expresses his intention to keep litigating, referring to his case as a "can of worms" that has been "open[ing] up" to him since he initiated this case. *Id.* The "worms," it appears, represent different aspects of the case as perceived by Plaintiff—procedural, with regard to Plaintiff's ongoing efforts to obtain legal counsel; emotional, such as Plaintiff's evolving "mindset" with respect to his case, including ongoing revelations of what specific harms Defendants allegedly caused him; and evidentiary, including public records that Plaintiff has requested and obtained from some purported Defendants. *Id.* at 1, 4, 6. Plaintiff states that he "would request more time to finalize his complaint/s [*sic*] and/or case." *Id.* at 6.

## II.    DISCUSSION

When the Court extended Plaintiff's deadline to file a SAC to January 31, 2025, it advised that it was providing "one last extension." Dkt. No. 12 at 3. Instead of complying with the order, however, Plaintiff submitted a letter on the date of the deadline that: (1) admitted Plaintiff's inability to prosecute his case; and (2) requested a third extension to his deadline. Dkt. No. 13 at 6. Having already advised Plaintiff that the second extension would be the "last," and having already dismissed the Complaint (Dkt. No. 4) and Amended Complaint (Dkt. No. 7) for failure to state a claim upon which relief can be granted, the Court is swayed more by Plaintiff's admission than by his request. The Court again notes that the events allegedly giving rise to Plaintiff's case occurred more than seven years ago, giving Plaintiff plenty of time to have requested records or obtained evidence before filing his case in this Court last March. And the two lengthy extensions that the Court has granted Plaintiff have not moved this case along any further. Given these facts, the Court is unclear if Plaintiff's statements that he "ha[s] no choice

other than to forfeit this lawsuit" (Dkt. No. 13 at 6) and "cannot continue" (*id.*) represent a request to dismiss the case. In light of the ambiguity of Plaintiff's filing, the Court will not dismiss this case without providing Plaintiff the express opportunity to clarify his intentions and, if appropriate, demonstrate why it should not be dismissed.

The Court may dismiss a case for a plaintiff's failure to prosecute their case. *See Ash v. Cvetkov*, 739 F.2d 493, 496–97 (9th Cir. 1984) ("It is within the inherent power of the court to sua sponte dismiss a case for lack of prosecution."); *see also* Fed. R. Civ. P. 41(b) (providing for involuntary dismissal where a plaintiff fails to prosecute). A court must weigh five factors before dismissing a case for failure to prosecute or comply with an order: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic alternatives." *Pagtalunan v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2002) (citing *Ferdik v. Bonzelet*, 963 F.2d 1258, 1260–61 (9th Cir. 1992)); *see also Beck v. Pike*, No. C16-1, 2017 WL 530354, at *5 (W.D. Wash. Feb. 9, 2017) ("Dismissal is proper when at least four factors support dismissal or where at least three factors 'strongly' support dismissal.").

Therefore, the Court ORDERS Plaintiff to show cause why the Court should not dismiss this case without prejudice. If Plaintiff wishes to dismiss his case, he SHALL file a response with a statement saying so. If Plaintiff wishes to continue with his case, he SHALL either: (1) file a SAC; or (2) file a response explaining why the Court should not dismiss his case for failure to prosecute or comply with a court order, focusing on the five factors listed in this paragraph. Should Plaintiff fail to respond within 21 days of this Order, the Court will dismiss this case.

//

//

### III. CONCLUSION

Accordingly, Plaintiff is ORDERED TO SHOW CAUSE why this matter should not be dismissed without prejudice. Plaintiff SHALL file either his response to this Order or a Second Amended Complaint **no later than March 17, 2025**.

Dated this 24th day of February 2025.

Tana Lin
United States District Judge