UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RORY M. PLANQUE, <br><br> Plaintiff, <br> v. <br><br> SEATTLE POLICE DEPARTMENT et al., <br><br> Defendants. | CASE NO. 2:24-cv-00347-TL <br><br> ORDER OF DISMISSAL |

This matter is before the Court on its own motion. On February 24, 2025, the Court ordered *pro se* Plaintiff Rory M. Planque to show cause as to why this case should not be dismissed without prejudice. Dkt. No. 14. The Court gave Plaintiff a deadline of March 17, 2025, to file a response to the Court's Order or, alternatively, to file a Second Amended Complaint ("SAC"). *Id.* at 6. That deadline has lapsed, and Plaintiff has not filed a response to the Court's order or SAC. Therefore, the Court DISMISSES this case without prejudice.

**I.  BACKGROUND**

This case appears to stem from Plaintiff's arrest, detention, and subsequent prosecution following one or more physical altercations that occurred in downtown Seattle on or about

ORDER OF DISMISSAL - 1

1  January 23, 2018. *See* Dkt. No. 7 at 7, 13–14, 22. Although the narrative of the incident that
2  Plaintiff recounted in his Complaint (Dkt. No. 4) and Amended Complaint (Dkt. No. 7) is not
3  entirely clear, Plaintiff appears to allege that he was assaulted on at least three separate occasions
4  that evening—by the proprietors and/or patrons of at least one bar and one hotel, by Seattle
5  Police Department ("SPD") officers, and by staff at Harborview Medical Center. *See id.* at 8. In
6  2023, Plaintiff stood trial in King County Superior Court for his actions on the evening in
7  question; he was acquitted. *Id.* at 10, 22. Plaintiff also appears to allege that, before and during
8  his trial, various officers of the Superior Court, including the presiding judge, mistreated him.
9  *See id.* at 21–22. Plaintiff's case thus appears to be based on his alleged mistreatment by
10 employees of the police department, the hospital, and the Superior Court.

11         On March 15, 2024, Plaintiff filed a proposed complaint and submitted an application to
12 proceed *in forma pauperis* ("IFP"). Dkt. Nos. 1, 1-1. On March 20, 2024, the Honorable Brian A.
13 Tsuchida, United States Magistrate Judge, granted Plaintiff's IFP application, but recommended
14 that the Court review his complaint under 28 U.S.C. § 1915(e)(2) before it issued summonses.
15 Dkt. No. 3. That same day, Plaintiff's proposed complaint was converted to an operative
16 complaint, and it was entered into the docket. Dkt. No. 4.

17         On April 10, 2024, after reviewing the complaint, the Court dismissed it without
18 prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6), finding that while Plaintiff had
19 given a "narrative recounting of the events that appear to form the factual bases for his lawsuit,"
20 he had "fail[ed] to provide a short and plain statement of the grounds for the court's jurisdiction
21 . . . [or] a demand for the relief sought." Dkt. No. 6 at 2 (quoting Fed. R. Civ. P. 8(a)(1), (3)).
22 The Court granted Plaintiff leave to file an amended complaint no later than May 10, 2024. *Id.*
23 at 3.

24

ORDER OF DISMISSAL - 2

On May 7, 2024, Plaintiff filed an amended complaint. Dkt. No. 7. On May 17, 2024, however, the Court dismissed it without prejudice pursuant to Rule 12(b)(6), noting that Plaintiff had again "fail[ed] to assert a plausible claim from which federal question jurisdiction arises." Dkt. No. 9 at 3. Based on the content of the amended complaint, the Court expressed skepticism that Plaintiff's claims were appropriate for federal court, but it granted Plaintiff leave to file a SAC no later than June 21, 2024. *Id.* at 4.

On June 21, 2024, Plaintiff filed a motion to request an extension of the deadline to file a SAC. Dkt. No. 10. Among other things, Plaintiff advised the Court that on June 6, 2024, he had "received new discovery in the mail from Seattle Police Department / City of Seattle FAS," which "demand[ed] much review which will take time." *Id.* at 1. Plaintiff asserted further that he had made a request for records and body-worn video footage from SPD, but that the agency had informed him that it would take "at least approximately two more months" to fulfill the request. *Id.* at 1–2. In a minute entry dated July 3, 2024, the Court granted Plaintiff's motion and extended his filing deadline to October 21, 2024.

On October 17, 2024, Plaintiff filed another motion requesting an extension to his deadline to file a SAC. Dkt. No. 11. Plaintiff advised the Court of a further delay in SPD's fulfillment of his records request. *See id.* at 1. The Court granted the motion, "provid[ing] Plaintiff with one last extension." Dkt. No. 12 at 3. But the Court also noted that "the events forming the basis for Plaintiff's Complaint appear to have taken place in 2018," and that "Plaintiff could have made his records requests—and received and reviewed what he had sought—before filing his complaint in federal court." *Id.* The Court ordered Plaintiff to file a SAC by January 31, 2025. *Id.*

On January 31, 2025, Plaintiff filed a letter with the Court. Dkt. No. 13. Although the letter touches on various subjects, the meat of the matter was Plaintiff's inability to meet his

1  deadline for filing a SAC. *See id.* at 6. Confusingly, Plaintiff's letter appeared to take two
2  conflicting positions. On the one hand, Plaintiff advised the Court that he "ha[d] no choice other
3  than to forfeit this lawsuit." *Id.* Plaintiff asserted that he "cannot continue," and he "apologize[d]
4  for any trouble [he'd] caused or any time [he had] wasted." *Id.* On the other hand, Plaintiff
5  expressed his intention to keep litigating, referring to his case as a "can of worms" that had been
6  "open[ing] up" to him since he first filed his complaint. *Id.* The "worms," it appeared,
7  represented different aspects of the complaint as perceived by Plaintiff—procedural, with regard
8  to Plaintiff's ongoing efforts to obtain legal counsel; emotional, such as Plaintiff's evolving
9  "mindset" with respect to his case, including ongoing revelations of what specific harms
10 Defendants allegedly caused him; and evidentiary, including public records that Plaintiff had
11 requested and obtained from some purported Defendants. *Id.* at 1, 4, 6. Plaintiff stated that he
12 "would request more time to finalize his complaint/s and/or case." *Id.* at 6.

13      On February 24, 2025, the Court issued an Order to Show Cause in response to Plaintiff's
14 letter. Dkt. No. 14. Noting the ambiguity in Plaintiff's letter, the Court advised that it would
15 provide Plaintiff with "the express opportunity to clarify his intentions and, if appropriate,
16 demonstrate why [his case] should not be dismissed." *Id.* at 5. The Court further explained that it
17 would dismiss the case should Plaintiff fail to comply with the Order. *Id.* The Court advised that,
18 if Plaintiff did not respond to the Order to Show Cause, the Court would weigh five factors in
19 consideration of whether dismissal was appropriate. *Id.* (citing *Pagtalunan v. Galaza*, 291 F.3d
20 639, 642 (9th Cir. 2002)). The Court instructed Plaintiff to, within 21 days, file either: "(1) a
21 SAC; or (2) response explaining why the Court should not dismiss his case for failure to
22 prosecute or comply with a court order, focusing on the five *Pagtalunan* factors. *Id.* Plaintiff's
23 21-day deadline lapsed March 17, 2025, and the Court has not received a response.
24

## II. LEGAL STANDARD

The Court may dismiss a case for a plaintiff's failure to prosecute their case. *See Ash v. Cvetkov*, 739 F.2d 493, 496–97 (9th Cir. 1984) ("It is within the inherent power of the court to sua sponte dismiss a case for lack of prosecution."); *see also* Fed. R. Civ. P. 41(b) (providing for involuntary dismissal where a plaintiff fails to prosecute). A court must weigh five factors before dismissing a case for failure to prosecute or comply with an order: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic alternatives." *Pagtalunan*, 291 F.3d at 642 (citing *Ferdik v. Bonzelet*, 963 F.2d 1258, 1260–61 (9th Cir. 1992)); *see also Beck v. Pike*, No. C16-1, 2017 WL 530354, at *5 (W.D. Wash. Feb. 9, 2017) ("Dismissal is proper when at least four factors support dismissal or where at least three factors 'strongly' support dismissal.").

## III. DISCUSSION

Having advised Plaintiff that, absent a response to the Order to Show Cause, it would consider dismissing the case, the Court now turns to the *Pagtalunan* factors. In applying the five factors, "[t]he first two factors nearly always tip in favor of dismissal, while the fourth generally cuts against it." *Campbell v. City of Seattle*, No. C19-1105, 2022 WL 17361290, at *3 (W.D. Wash., Dec. 1, 2022) (internal quotation marks and citation removed). "The decisive factors for the Court's consideration, then, are the risk of prejudice and availability of lesser sanctions." *Id.* The Ninth Circuit has expressly approved dismissal when "at least four factors support dismissal" or "three factors strongly support dismissal," but this District has disavowed a "mathematical" application of the factors. *Id.* (citing *Hernandez v. City of El Monte*, 138 F.3d 393, 399 (9th Cir. 1998)). The factors are instead "a way for a district judge to think about what to do, not a series of conditions precedent before the judge can do anything." *Valley Eng'rs Inc.*

*v. Elec. Eng'g Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998). Ultimately, the decision to dismiss under Federal Rule of Civil Procedure 41(b) is "committed to the discretion of [the] district judge[.]" *Smith v. Legacy Partners, Inc.*, No. C21-629, 2022 WL 2135369, at *1 (W.D. Wash. June 14, 2022). "In evaluating the five factors, the Court holds *pro se* litigants like [Plaintiff] to the same procedural rules as those parties represented by counsel." *Campbell*, 2022 WL 17361290, at *3. The Court addresses the factors in turn.

        **1.**        **The Public's Interest in Expeditious Resolution of Litigation**

"[T]he public's interest in expeditious resolution of litigation always favors dismissal." *Yourish v. Cal. Amplifier*, 191 F.3d 983, 990 (9th Cir. 1999); *accord Pagtalunan*, 291 F.3d at 642. Even so, "this factor is not an automatic weight on the scale of dismissal; rather, the Court must still find unreasonable delay." *Campbell*, 2022 WL 17361290, at *3–4. "[The Ninth Circuit] defer[s] to the district court's judgment about when a delay becomes unreasonable because it is in the best position to determine what period of delay can be endured before its docket becomes unmanageable." *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1227 (9th Cir. 2006) (cleaned up). Here, Plaintiff has had nearly 11 months since his amended complaint was dismissed without prejudice to file a viable complaint. *See* Dkt. No. 9 (dismissing amended complaint and granting leave to file SAC). Plaintiff has repeatedly forecast his submission of a SAC, but each time his deadline has drawn near, Plaintiff has requested more time and provided a new reason for doing so. *See* Dkt. No. 10 at 3 (requesting more time to "seek a means of housing"); Dkt. No. 11 at 1 (requesting more time to receive "evidence regarding . . . injuries" from SPD); Dkt. No. 13 at 8 (requesting more time because "offenders may very well still be out there working in public health and safety"). While the Court is sympathetic to Plaintiff's circumstances, it nevertheless finds his shifting rationales for his serial requests for extensions to be unreasonable. Upon the promised or presumed resolution of one set of

circumstances, another has surfaced. Moreover, Plaintiff did not provide the Court with any explanation as to how and why his most recent justification for a delay—*i.e.*, his speculation that his "offenders may . . . still be . . . working in public health and safety"—warranted another extension. The continued employment of alleged tortfeasors has no bearing on Plaintiff's ability to put together a short and plain statement of his claim.

Therefore, the Court finds further delay unreasonable; this factor favors dismissal.

2.   **The Court's Need to Manage Its Docket**

The second factor favors dismissal for the same reasons as the first. *See In re Phenylpropanolamine*, 460 F.3d at 1227 ("This factor is usually reviewed in conjunction with the public's interest in expeditious resolution and, as with the first factor, we give deference to the district court since it knows when its docket may become unmanageable." (cleaned up)). As explained above, Plaintiff's shifting rationales for requesting extensions do not demonstrate a likelihood that he will file a well-pleaded complaint within a reasonable amount of time. The Court's regular review of Plaintiff's repeated requests for extension "has consumed some of the [C]ourt's time that could have been devoted to other cases on the docket." *Pagtalunan*, 291 F.3d at 642.

Therefore, this factor favors dismissal.

3.   **The Risk of Prejudice to Defendants**

The law presumes prejudice where, as here, the Court finds unreasonable delay. *In re Phenylpropanolamine*, 460 F.3d at 1227. As no summonses have been issued in this case, and there is no operative complaint, none of the potential Defendants in this case is "aware of any need to preserve evidence or maintain contact with witnesses." *Clervain v. Fox*, No. C20-189, 2021 WL 1663781, at *1 (D. Mont. Apr. 28, 2021). The events giving rise to Plaintiff's case allegedly occurred more than seven years ago in January 2018 (*see* Dkt. No. 7 at 13), but

Plaintiff waited until March 15, 2024 to file a lawsuit (Dkt. No. 1). As noted in the Court's prior order, Plaintiff could have made his records requests—and received and reviewed what he had sought—in the six years between the incident and the time before he filed his complaint in federal court. Dkt. No. 12 at 3. "[D]elay inherently increases the risk that witnesses' memories will fade and evidence will become stale." *Pagtalunan*, 291 F.3d at 643.

Therefore, this factor favors dismissal.

### 4. The Public Policy Favoring Disposition on the Merits

The fourth factor generally "counsels strongly against dismissal." *Hernandez*, 138 F.3d at 399. And while the Court finds the delay here to be unreasonable, it cannot identify any particular dilatory conduct or delaying tactics on Plaintiff's part that might mitigate against public policy here. *See In re Phenylpropanolamine*, 460 F.3d at 1228 (discounting public policy favoring disposition on the merits where party's conduct "impedes progress in that direction").

Therefore, this factor does not favor dismissal.

### 5. The Availability of Less Drastic Sanctions

"The district court abuses its discretion if it imposes a sanction of dismissal without first considering the impact of the sanction and the adequacy of less drastic sanctions." *United States v. Nat'l Med. Enters., Inc.*, 792 F.2d 906, 912 (9th Cir. 1986); *see also Raiford v. Pounds*, 640 F.2d 944, 945 (9th Cir. 1981) (finding that district court must consider less drastic alternatives, "[e]specially when a case is still young"). "Lesser sanctions include a warning, formal reprimand, placing the case at the bottom of the calendar, a fine, the imposition of costs or attorney fees, dismissal of the suit unless new counsel is secured, or preclusion of claims or defenses." *Campbell*, 2022 WL 17361290, at *5 (citing *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 132 n.1 (9th Cir. 1987)). The Ninth Circuit uses three factors to assess the adequacy of a district court's exploration of less severe sanctions: "whether the court explicitly discussed

alternative sanctions, whether it tried them, and whether it warned the recalcitrant party about the possibility of dismissal." *Valley Eng'rs Inc.*, 158 F.3d at 1057; *accord Malone*, 833 F.2d at 132.

In the circumstances here, the menu of less drastic sanctions is considerably limited. The Court sees little to be gained from a formal reprimand, and placing the case at the bottom of the calendar would only further stall the resolution of this matter—precisely the outcome that the Court seeks to avoid. Moreover, Plaintiff is proceeding *in forma pauperis*, and financial sanctions are therefore unwarranted, unfair, and likely impractical. Plaintiff is *pro se*, so the Court cannot condition anything on his retaining new counsel. And with respect to preclusion of claims, Plaintiff has not yet pleaded a valid complaint, and his claims remain undefined and largely unknown. Finally, the Court expressly warned Plaintiff that, absent specific action on his part, it would seriously consider dismissal. *See* Dkt. No. 14 at 5. This advisory has gone unheeded. Consequently, dismissal provides the only viable option for the Court.

Therefore, this factor favors dismissal.

*   *   *

Four factors—the first, second, third, and fifth—favor dismissal. Under such circumstances, the Ninth Circuit has expressly endorsed dismissal. *See Hernandez*, 138 F.3d at 399. Therefore, this case is DISMISSED.

### IV.    CONCLUSION

Accordingly, this case is DISMISSED WITHOUT PREJUDICE. The Clerk of Court is DIRECTED to close the case.

Dated this 7th day of April 2025.

Tana Lin
United States District Judge